UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19CR961 SRC |
| | ) | |
| ANTHONY CALDWELL, | ) | |
| a/k/a "PETA MAN," | ) | |
| | ) | |
| Defendant. | | |

## **GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

### **1. PARTIES:**

The parties are the defendant Anthony Caldwell, represented by defense counsel Luke

Baumstark and Eric Barnes, and the United States of America (hereinafter "United States" or

"Government"), represented by the Office of the United States Attorney for the Eastern District

of Missouri. This agreement does not, and is not intended to, bind any governmental office or

agency other than the United States Attorney for the Eastern District of Missouri. The Court is

neither a party to nor bound by this agreement.

### **2. GUILTY PLEA:**

**A.    The Guilty Plea.** Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal

Procedure, in exchange for the defendant's voluntary plea of guilty to the **lesser-included**

**offense** contained Count One of the Indictment, the government agrees that no further federal

prosecution will be brought in this District relative to the defendant's violations of federal law,

1

known to the United States at this time, arising out of the events set forth in this indictment, know to the United States at this time.

**B.** **The Sentence.** In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree to jointly recommend a sentence of imprisonment of ninety (90) months. It is acknowledged herein that the Court is neither bound by nor a party to this plea agreement.

**C.** **Forfeiture:** Defendant agrees to forfeit all of defendant's interest in all items seized by law-enforcement officials during the course of their investigation and will not contest the forfeiture of such items. Defendant admits that all United States currency, weapons, property and assets seized by law enforcement officials during their investigation constitute the proceeds of defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the Government and to rebut any claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

### 3. ELEMENTS:

As to the offense in **Count One**, the Defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

(1) Two or more people reached an agreement to commit the crime of distributing and possessing with intent to distribute fentanyl;

2

(2) The Defendant voluntarily and intentionally joined in the agreement; and

(3) At the time the Defendant joined in the agreement, the Defendant knew the purpose of the agreement.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts, which include evidence developed in 4:19CR961 SRC, may be considered as relevant conduct for pursuant to Section 1B1.3:

Un-indicted co-conspirator Juan Gonzalez supplied fentanyl to Caldwell, Futrell and co-conspirators Roman Frenchie, Michael Moore, Martes Mosely, Tyrone Sims and Kevin White-until Gonzalez was arrested by the DEA and U.S. Marshals in September, 2019. Futrell and his co-conspirators then obtained another source of supply in Arizona and continued to distribute fentanyl.

Prior to his arrest, Gonzalez would either ship packages of fentanyl through the mail or would hand-deliver the narcotics to co-conspirators Jazmynn Lester and Aaliah Lester, who had traveled to Arizona at the request of Futrell and others.

Jazmynn Lester and Aaliah Lester were "mules" in that they traveled to Arizona to meet with the source of supply in order to pay U.S. currency for the fentanyl and then transport the fentanyl back to St. Louis for distribution. They were compensated for their role as mules. Jazmynn Lester also facilitated an address where fentanyl could be received from Arizona. Jazmynn Lester was a paramour of co-conspirator Kevin White.

3

On June 18, 2019 a suspicious package was seized by DEA agents during a parcel interdiction operation at the United Parcel Service (UPS) sorting facility in St. Louis. The package was deemed suspicious after a drug sniffing canine alerted an agent to the package. The package was sent from a UPS store in Phoenix, Arizona and was addressed to Kelvin Lester at 6060 W. Cabanne Street, St. Louis, Missouri. After executing a search warrant for the package, officers discovered two plastic bags wrapped in cellophane that contained compressed white powder. The substance was later tested at the St. Louis Metropolitan Police Laboratory and it was determined to be 479 grams of fentanyl. Later the same day, law enforcement conducted a controlled deliver of the package to 6060 W. Cabanne. Once the owner of the residence brought the package into the residence, officers executed an anticipatory search warrant and recovered the package. Further investigation revealed that Jazmynn Lester had contacted the owner of the residence on June 17, 2018 and advised that she was expecting a package to be delivered for her boyfriend, Kevin White. The owner, who is not involved in the instant offense, told police that she had received several packages for White in the past. She cooperated with police, identified a photo of Kevin White, showed police the phone number used by "Chucky" a/k/a White to check on the status of the package and investigators confirmed in a search of law enforcement data bases that the phone number was associated with Kevin White.

While police were at the Cabanne residence, Kevin White and his cousin T.S. showed up to retrieve the package. T.S. was arrested after a brief foot pursuit. White was able to escape in his vehicle. T.S. later pleaded guilty in the Eastern District of Missouri to possession with intent to distribute a controlled substance.

4

From at least May 2019 through September 2019, the FBI utilized a confidential informant (CI) who purchased fentanyl from co-conspirators Caldwell, Futrell and Frenchie. Caldwell conducted hand-to-hand distribution of fentanyl on or about May 8, 2019 and August 14, 2019. On or about May 22, 2019 Caldwell arranged for the sale of fentanyl to the confidential informant and Futrell showed up to finalize the transaction.

Jimmiesha Williams (hereafter "Williams") provided a safe house at 5713 Ramsey for co-conspirators to conduct their business and would knowingly store narcotics, firearms and U.S. currency in her residence. She would also register vehicles in her name in order to shield other co-conspirators, especially her paramour Maricus Futrell from potential law enforcement scrutiny. Williams would also take various vehicles used by co-conspirators to body shops to get them painted, again in an effort to thwart law enforcement scrutiny.

Deniesha Baker (hereafter "Baker") provided a "safe house" or "stash house" at 3740 Melba for her paramour Futrell, where he would store narcotics and U.S. currency (proceeds of his drug trafficking) and she maintained her premises for the purpose of distributing fentanyl. Futrell and other members of the conspiracy would keep a "lab" at Baker's house, which was comprised of drug paraphernalia used to cut the fentanyl and package it for distribution – grinders, pill presses, scales, empty capsules and Dormin. Baker would also allow Futrell to keep his vehicles at her residence, again in an effort to thwart law enforcement scrutiny.

Search warrants were executed at Baker's residence, 3740 Melba Place and at William's residence, 5713 Ramsey. During the search of Williams' residence, officers recovered a multitude of evidence related to the instant conspiracy, including: one baggie containing 24.1 grams of fentanyl; $13,200.00 in United States currency; eight cell phones; two pill press trays; four grinders; one box of Dormin; a box of plastic baggies; and empty pill capsules. Officers further found a 2019

5

Dodge Charger, bearing Illinois dealer plates, parked in the driveway. Futrell often operated the vehicle. A computer inquiry of the vehicle revealed it was stolen out of Bloomington, Minnesota. A search of Deneisha Baker's cellular phone revealed internet history for purchasing grinders and other drug paraphernalia used to package and distribute fentanyl.

During the search of 5713 Ramsey Drive on September 20, 2019, agents found Martes Mosley in the front living room with $705 in United States currency in his right front pants pocket. Inside Mosley's shoe were two baggies with 41 capsules containing 3.78 grams of fentanyl. Tyrone Sims, Christopher Turner, and Michael Moore were found together in a bedroom located in the northwest corner of the residence. In the bedroom agents found a black Lacoste satchel, a blue Lacoste satchel, and a black Pyramio satchel. The black Lacoste satchel contained the following: a clear plastic baggie containing 13.8 grams of marijuana; a clear plastic baggie with 25 capsules containing 4.2 grams of fentanyl; $103.25 in United States currency; a silver digital scale; and a black cellular phone. The blue Lacoste satchel contained the following: one baggie with 10 capsules containing 1.9 grams of fentanyl; a second baggie with 698 capsules containing 6.5 grams of fentanyl; a third baggie 10 capsules containing 2.1 grams of fentanyl; a fourth baggie with 15 capsules containing 3.5 grams of fentanyl; and a semiautomatic Glock, model 23, .40 caliber handgun loaded with one round and an inserted magazine with 11 additional rounds. The black Pyramio satchel contained the following: a clear plastic baggie with 100 capsules containing 12.1 grams of fentanyl; a semiautomatic, Glock, model 29, .40 caliber handgun, loaded with one round chambered and an inserted magazine containing six rounds. On the floor near Sims, Turner and Moore agents found a gold-painted Draco, 7.62mm semi-automatic rifle, with one round in the chamber and an inserted magazine containing 29 rounds of 7.62mm caliber ammunition. Further, inside a black and silver Nike backpack on the floor near

6

Sims, Turner, and Moore, officers recovered a black Micro Drako brand, 7.62mm caliber firearm which was loaded with one 7.62mm round and an inserted magazine containing 25 rounds of 7.62mm ammunition. In the bedroom located in the southwest corner of the residence, agents located Jimmiesha Williams along with her juvenile daughter and Maricus Futrell.

During a search of the second bedroom, agents recovered the following: two bundles of United States currency totaling $9,255 that were wrapped together by a rubber band; a pink purse containing $245.00 in United States currency; and a black Louis Vuitton brand satchel, which was hanging on the inside of the bedroom door. Inside the Louis Vuitton satchel were the following items: a Glock, model 21, semi-automatic firearm with one round in the chamber and an inserted magazine with 13 additional rounds; one spent firearm projectile found wrapped in a plastic baggie; keys to the white Lexus vehicle parked on the driveway that was registered to Jimmiesha Williams; and keys to the 2019 Dodge Charger that was stolen out of Bloomington, Minnesota which had been recovered during the search of the residence located at 3740 Melba Place. The fentanyl and five firearms recovered from 3740 Melba Place and 5713 Ramsey Drive were analyzed at the St. Louis Metropolitan Crime Laboratory. The narcotics recovered from 3740 Melba Place (24.1 grams of fentanyl) and had not yet been encapsulated. The narcotics recovered from 5713 Ramsey Drive included a total of 858 capsules of fentanyl, weighing 77.81 grams. All five firearms seized from the Melba Place residence were test fired and functioned as designed. A search of the firearms through the National Crime Information Center database revealed that the Glock, model 29 was reported stolen on March 18, 2018 from St. Louis County, Missouri.

The precise amount of fentanyl for which Defendant Caldwell is responsible cannot be calculated with absolute precision however, the parties stipulate and agree that Defendant is responsible for at least 1.2 kilograms but less than 4 kilograms of fentanyl.

7

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the **Lesser-included offense in Count 1** is:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

#### Count One

**(1) Base Offense Level:** The parties agree that the base offense level is 32, as found in Section 2D1.1(c)(4).

**(2) Specific Offense Characteristics:** 2 levels are added as Defendant possessed a firearm, pursuant to Section 2D1.1(b)(1).

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.

8

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 31. The parties agree that no matter the advisory guidelines calculations, they will jointly recommend a sentence of ninety (90) months imprisonment, which could represent a variance under the sentencing guidelines.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

9

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be

10

sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

### 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

### b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by

11

the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

   **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

  In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the

attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by

13

any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

### 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

14

8/17/2022
_____
Date


_____
PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney


8-17-22
_____
Date


_____
ANTHONY CALDWELL
Defendant


8-17-22
_____
Date


_____
LUKE BAUMSTARK/ERIC BARNES
Attorneys for Defendant


15